**F & G SCROLLING MOUSE, L.L.C., Plaintiff,**

v.

**IBM CORPORATION, Defendant.**

No. 1:99CV460.

United States District Court,
M.D. North Carolina,
Winston–Salem.

Oct. 26, 1999.

er a particular job required pole climbing is not limited to any particular facility or region.

Christopher G. Daniel, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, David L. Witcoff, Timothy John Heverin, John A. Marlott, Kenneth R. Adamo, Jones Day Reavis & Pogue, Chicago, IL, for IBM Corporation.

Raymond P. Niro, Michael P. Mazza, Arthur Anthony Gasey, David J. Sheikh, Niro Scavone Haller & Niro, Ltd., Chicago, IL, for F & G Scrolling Mouse, L.L.C.

## ORDER

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant IBM Corporation's motion to (1) bifurcate the trial into separate liability and damage phases and (2) stay discovery of the willfulness and damage issues. Plaintiff vigorously opposes the motion in every aspect.

This a patent case first filed in the Northern District of Illinois. Plaintiff F & G Scrolling Mouse, L.L.C., filed suit alleging that defendant had willfully infringed United States Letters Patent No. 5,313,229 ("the '229 patent") and 5,374,942 ("the '942 patent") issued to plaintiff.[1] Plaintiff has demanded a jury trial. After defendant identified ten employees located in the Research Triangle Park in North Carolina as being responsible for the development and marketing of defendant's allegedly infringing product, the case was transferred to this Court, largely for the convenience of the witnesses.

### Discussion

### A. Factors Relevant to Making Bifurcation Decision

Rule 42(b) of the Federal Rules of Civil Procedure governs motions to bifurcate an action into several separate trials. This rule provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials

---

1. Specifically, plaintiff argued that defendant was making, using, offering for sale, and selling a computer mouse capable of concurrently pointing and scrolling at a variable rate which allegedly infringes plaintiff's above referenced patents.

will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The Court is permitted considerable discretion in exercising its powers under the rule. *White v. Bloomberg,* 501 F.2d 1379 (4th Cir.1974). *See generally* 9 Charles Alan Wright, *et al., Federal Practice and Procedure* §§ 2381, 2387–92, at 427, 470–515 (1990) (broad discretion).

■ Notwithstanding the broad discretion conferred by Rule 42(b), the bifurcation of issues and the separate trial of them is not the usual course of events. Wright, *supra* at 474. Nothing else appearing, a single trial will be more expedient and efficient. *Industrias Metalicas Marva, Inc. v. Lausell,* 172 F.R.D. 1, 2 (D.P.R.1997); *Johns Hopkins University v. Cellpro,* 160 F.R.D. 30, 35 (D.Del.1995). The party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party. *Brad Ragan, Inc. v. Shrader's Inc.,* 89 F.R.D. 548, 550 (S.D.Ohio 1981); *Smith v. Alyeska Pipeline Service,* 538 F.Supp. 977 (D.Del.1982), *aff'd,* 758 F.2d 668 (Fed.Cir. 1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985); *see also* Wright, *supra* at 482 (p. 101, 1999 Pocket Part). Merely presenting some proof which supports bifurcation is not enough. *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1433–34 (D.Del. 1989).

■ As a general rule, patent cases often deserve consideration for separate trials under Rule 42(b). This is because in patent cases the issues of both liability and damages may be complex, but not interwoven, and the trial of the damage issues themselves can be time consuming and expensive. *Mag Instru-*

*ment, Inc. v. J. Baxter Brinkmann Intern.,* 123 F.R.D. 543, 545 (N.D.Tex.1988) (collecting cases); *Smith,* 538 F.Supp. at 984 (collecting cases). However, the mere status of being a patent case does not create a presumption or inference in favor of bifurcation and separate trials. *Willemijn Houdstermaatschaapij BV,* 707 F.Supp. at 1433. Rather, the decision must be made on a case-by-case basis after consideration of all of the relevant factors and the individual circumstances. *Id.; Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3rd Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978). The benefit of bifurcation must outweigh the disadvantages. *Industrias Metalicas Marva,* 172 F.R.D. at 2.

A substantial body of case law has arisen to which a court may turn to inform its discretion. However, the actual decision reached in any one of those cases is of limited value because only the specific facts and circumstances of the case before the court can provide the answer to the question of whether the advantages of bifurcation outweigh the disadvantages. *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254, 256 (D.N.J.1997). On the other hand, those cases discuss a number of factors relevant to a bifurcation decision, which appear on a recurring basis, and which provide guidance in deciding whether bifurcation should be granted. Those factors are as follows:

### 1. Separability of the issues.

■ This factor constitutes a threshold inquiry because bifurcation raises the possibility that any delay between separate trials may result in the loss of one or more jurors which would require the selection of a new jury. In that instance, if the issues were not truly separable, the result would be that different juries would have considered the same issue, in violation of the Seventh Amendment. *See* Wright, *supra* at 512 (p. 110, 1999 Pocket Part), *citing Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1303 (7th Cir.), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); *Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir. 1996). Consequently, the issues must be tru-

ly separable before separate trials can be ordered without the risk of untoward consequences.[2] Even if the issues are separable for purposes of the Seventh Amendment, a court will likely decline to bifurcate if there will be a significant overlap of evidence at the two trials which would make separation inefficient and inexpedient.[3]

The first matter for examination will normally be whether the liability phase can be separated from the damage portion of the trial. In a patent case, the issues of liability and damages are most likely susceptible to separate trials without violating the Seventh Amendment. *Swofford v. B & W, Inc.*, 34 F.R.D. 15, 20 (S.D.Tex.1963), *aff'd*, 336 F.2d 406 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). The criteria is not whether the same evidence is presented at both trials, but rather whether the same essential issues will be decided.[4] In patent cases, bifurcation will not likely be precluded on the ground that liability and damages are so inextricably interwoven that separation will render both trials unfair because of confusion and uncertainty. *Id.*, 336 F.2d at 415. While, in general, an overlap of proof serves to caution against bifurcation, a mere minor overlap of evidence between the liability phase and the damage phase has not prevented courts from ordering an otherwise justified bifurcation.[5] However, mere lack of overlap in evidence by itself does not justify separate trials. That is merely the starting point for the analysis. Rather, to overcome the presumption in favor of a unitary trial, a proponent for bifurcation must provide reasons showing bifurcation to be preferable.

The most common justification for separate trials is that the discovery and/or the trial of the issues of liability and damages are sufficiently complex so that the two issues should proceed separately.[6] Determination of complexity, in turn, requires an examination of the amount and kind of evidence that will be used to support each issue. *Willemijn Houdstermaatschaapij BV*, 707 F.Supp. at 1435; *Home Elevators, Inc. v. Millar Elevator Serv. Co.*, 933 F.Supp. 1090, 1091 (N.D.Ga.1996).

Complexity of the liability phase of a patent trial justifying bifurcation may arise based on the number of patents, claims, products and defendants.[7] Notwithstanding a complex liability phase, if the damage phase will be very simple, bifurcation may not be justified.[8]

**2.** *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965) (approving of district court's decision to separate trials on liability and damages in patent case, absent evidence that issues of fact common to liability and damages exist so as to preclude a separate trial).

**3.** *See Brad Ragan, Inc. v. Shrader's Inc.*, 89 F.R.D. 548 (S.D.Ohio 1981) (proof on liability issues would substantially overlap with proof on damages); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429 (D.Del. 1989) (minor evidentiary overlap may not strongly militate against bifurcation, but certainly does not favor it).

**4.** *Mag Instrument, Inc. v. J. Baxter Brinkmann Intern. Corp.*, 123 F.R.D. 543, 546 (N.D.Tex. 1988); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F.Supp. 1112, 1117 (D.Del.1984).

**5.** *Paine, Webber, Jackson & Curtis*, 587 F.Supp. 1112; *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308 (E.D.N.C.1998); *Willemijn Houdstermaatschaapij BV*, 707 F.Supp. at 1434 (noting that minor evidentiary overlap does not strongly militate against bifurcation); *Mag Instrument*,

123 F.R.D. 543; *Lemelson v. Apple Computer, Inc.*, 28 U.S.P.Q.2d 1412, 1993 WL 556452 (D.Nev.1993); *AVIA Group Intern., Inc. v. Nike, Inc.*, 22 U.S.P.Q.2d 1475, 1991 WL 340569 (D.Or.1991); *E.I. du Pont de Nemours & Co. v. Molex Inc.*, 17 U.S.P.Q.2d 1976 (D.Del.1990).

**6.** *Novopharm*, 181 F.R.D. at 311; *Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 8 (D.P.R.1997); *Lemelson*, 28 U.S.P.Q.2d 1412, 1993 WL 556452; *AVIA Group*, 22 U.S.P.Q.2d 1475, 1991 WL 340569; *Eaton Corp. v. Auburn Gear Inc.*, 8 U.S.P.Q.2d 1373 (N.D.Ind.1988); *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977, 983 (D.Del.1982), *aff'd*, 758 F.2d 668 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985).

**7.** *Princeton Biochemicals, Inc. v. Beckman Instruments*, 180 F.R.D. 254, 257 (D.N.J.1997); *Lemelson*, 28 U.S.P.Q.2d at 1423; *AVIA Group*, 22 U.S.P.Q.2d 1475, 1991 WL 340569.

**8.** *Home Elevators, Inc. v. Millar Elevator Service Co.*, 933 F.Supp. 1090 (N.D.Ga.1996) (two-supplier market, one-time infringement, and plaintiff never licensed patent); *Brad Ragan*, 89 F.R.D. at 550 (minimum damages).

The damage phase has been found to be complex when damages are predicated on lost profits and/or reasonable royalties which can involve expert witnesses and voluminous financial data.[9] And, a number of cases have ordered a separate trial for the damage issues based on the expense and time in assembling evidence of costs, sales, and profits, and because of voluminous documents, and costs of expert witnesses. Such factors have justified a decision to wait to see if liability can be established first before conducting damage discovery and trial.[10] (However, unless a court has held a preliminary injunction hearing, it likely may not be able to truly evaluate the chances that the trial will end after a liability determination. *See Johns Hopkins University,* 160 F.R.D. at 35.)

Next, as the parties in this case have shown, there has been some concern over whether the issue of willful infringement is a separable issue. Plaintiff suggests that willfulness cannot be bifurcated without a violation of the Seventh Amendment. *See e.g., AVIA Group Intern., Inc. v. Nike, Inc.,* 22 U.S.P.Q.2d 1475, 1477, 1991 WL 340569 (D.Or.1991). The question then is whether the issue of willfulness will overlap with findings made with respect to both liability and damages. In *AVIA,* however, the court rejected a finding of unconstitutionality on the basis that intent, the focus of willfulness, was irrelevant to the issue of infringement. The *AVIA* court's view is consonant with subsequent Supreme Court precedent in *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (proof of intent is not required under either literal or doctrine of equivalents infringement analysis). Other

courts considering this question have also found willfulness to be a separate issue from infringement. *See Princeton Biochemicals,* 180 F.R.D. at 258 (infringement requires proof that accused individual, without authority, makes, uses, offers to sell, etc., the patent invention, whereas willfulness requires proof of accused individual's intent); *Lemelson v. Apple Computer, Inc.,* 28 U.S.P.Q.2d 1412, 1423, 1993 WL 556452 (D.Nev.1993) (rejecting overlap of willfulness and liability).

This Court is not aware of any precedent holding that liability and willfulness are issues which can never be separated without a Seventh Amendment violation. Furthermore, proof of damages does not require a finding of willfulness, and vice-versa. *Id.;* 35 U.S.C. § 284. Instead, a finding of willfulness simply opens the door for the Court to assess treble damages at its discretion. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1364 (Fed.Cir.1998). Therefore, the Court concludes that in normal circumstances, willful infringement is a separate issue from both liability and damages and may be bifurcated from either or both. When bifurcation is granted, willfulness is usually lumped with damages in the second trial.[11]

Plaintiff argues that even if bifurcation of willfulness from the liability phase is not precluded by the Seventh Amendment, nevertheless, certain infringement defenses available to a defendant may involve factual issues which pertain to the willfulness inquiry as well, and for this reason, the Court should not order bifurcation. For instance, plaintiff contends that evidence of copying

---

9. *Novopharm,* 181 F.R.D. at 311 (voluminous document production); *Princeton Biochemicals,* 180 F.R.D. at 260; *AVIA Group,* 22 U.S.P.Q.2d 1475, 1991 WL 340569; *Eaton Corp.,* 8 U.S.P.Q.2d 1373, 1988 WL 273448 (patent never licensed); *Smith,* 538 F.Supp. at 984; *but see Home Elevators,* 933 F.Supp. 1090 (one-time infringement and two-supplier market).

10. *Shepard v. International Business Machines,* 45 F.R.D. 536 (S.D.N.Y.1968); *Lyophile–Cryochem Corp. v. Chas. Pfizer & Co.,* 7 F.R.D. 362 (E.D.N.Y.1947). Additional factors may complicate damage discovery and trial. *Giro Sport Design Inc. v. Pro–Tec Inc.,* 10 U.S.P.Q.2d 1863, 1989 WL 418774 (N.D.Cal.1989) (damages must

be allocated against all infringers, including eleven non-parties).

11. *Patent Holding Co. v. Tg (Usa) Corp.,* 46 U.S.P.Q.2d 1566, 1998 WL 241203 (E.D.Mich. 1998); *Neorx Corp. v. Immunomedics, Inc.,* 28 U.S.P.Q.2d 1395, 1993 WL 592531 (D.N.J.1993) (remanding for further consideration of separate trials on liability and willfulness); *AVIA Group,* 22 U.S.P.Q.2d 1475, 1991 WL 340569; *Amsted Industries, Inc. v. National Castings, Inc.,* 16 U.S.P.Q.2D 1737, 1740, 1990 WL 106548 (N.D.Ill.1990); *Smith,* 538 F.Supp. at 986; *Novopharm,* 181 F.R.D. at 310; *Princeton Biochemicals,* 180 F.R.D. at 258.

would be relevant to both a defendant's obviousness defense and the plaintiff's willfulness claim. *See, e.g., Amsted Industries, Inc. v. National Castings, Inc.,* 16 U.S.P.Q.2d 1737, 1990 WL 106548 (N.D.Ill.1990). While this may be true, it must be remembered that in *Amsted,* the court also found the overlap to be insubstantial and granted defendant's motion to try liability separately from willfulness and damages. *Id.* at 1740. The use of copying evidence for both willfulness and non-obviousness is akin to the use of sales information for both commercial success (to prove non-obviousness) and damages.[12] While it is true that some of the same witnesses or documents may be used, it is not necessarily true that the jury will need to use all of the evidence to decide both issues or that the amount and type of evidence will be the same.

One matter which could prove more troublesome arises when a defendant raises equitable defenses to infringement. For example, in *Haworth, Inc. v. Herman Miller, Inc.,* 32 U.S.P.Q.2d 1365, 1993 WL 761974 (W.D.Mich.1993), the court found that proof of willful infringement could provide a basis for the plaintiff to negate the defendant's equitable defenses. Therefore, it required willfulness to be tried in the liability phase along with the defendant's equitable defenses.

At times, a special issue may be found to merit its own separate trial, such as patent ownership, combination, etc.[13] That is not present in the instant case.

## 2. Simplification of discovery and the conservation of resources.

A decision to bifurcate a case into separate trials immediately requires another equally important one—should discovery also be bifurcated and either stayed or staged.[14] The cost of discovery and trial preparation, including expert witnesses, may convince the court that a stay of discovery and a second trial is best.[15] This procedure can save expense and time, and protect sensitive information if no liability is found,[16] but otherwise can increase costs and inconvenience by significantly delaying final resolution of the controversy, perhaps requiring two juries, and depriving the parties of damage information which is useful for settlement.[17]

Sometimes a bifurcation of trial may not require a bifurcation and the staying of discovery. For example, when the only justification for bifurcation is possible jury confusion because of complexity of the issues and numerous experts, simultaneous discovery and back-to-back trials with the same jury may be in order.[18]

In between the extremes from simultaneous discovery to a stay in discovery, a court may stage discovery so that only the more (1) expensive phases of damage discovery, such as expert witness or third-party witnesses, or (2) sensitive subjects such as attorney opinions, are set for the last part of the discovery period.[19] Delaying expensive

---

12. *Princeton Biochemicals,* 180 F.R.D. at 259; *Willemijn Houdstermaatschaapij BV,* 707 F.Supp. 1429; *Paine, Webber, Jackson & Curtis,* 587 F.Supp. 1112, 1116.

13. *Kahn v. General Motors Corp.,* 865 F.Supp. 210 (S.D.N.Y.1994), *appeal granted on other grounds.,* 64 F.3d 675 (Fed.Cir.1995) (ownership). *Molinaro v. Watkins–Johnson CEI Div.,* 60 F.R.D. 410 (D.Md.1973) (in suit charging infringement of combination patent, separate trial was granted on issue of whether accused device was combined with receiver in United States and all parties agreed that there was no infringement absent combination.)

14. *Lemelson,* 28 U.S.P.Q.2d 1412, 1993 WL 556452; *AVIA Group,* 22 U.S.P.Q.2d at 1478 (attorney-client opinion discovery relevant to willfulness alone stayed until after trial on liability).

15. *Novopharm,* 181 F.R.D. at 312 (collecting cases); *Lemelson,* 28 U.S.P.Q.2d at 1424.

16. A stay should be considered in order "to defer costly discovery and trial preparation pending the resolution of preliminary liability issues." *Novopharm,* 181 F.R.D. at 312; *Princeton Biochemicals,* 180 F.R.D. at 256 (cost and sensitive information).

17. *Home Elevators, Inc.,* 933 F.Supp. 1090; *Johns Hopkins University v. Cellpro,* 160 F.R.D. 30, 35 (D.Del.1995); *Brad Ragan,* 89 F.R.D. at 551.

18. *Patent Holding,* 46 U.S.P.Q.2d 1566.

19. *Patent Holding,* 46 U.S.P.Q.2d 1566, *Industrias Metalicas Marva, Inc. v. Lausell,* 172 F.R.D. 1, 8–9 (D.P.R.1997); *see Neorx,* 28 U.S.P.Q.2d 1395, 1993 WL 592531.

discovery allows time for pretrial settlement, perhaps through mediation. Delaying sensitive discovery may provide better protection against prejudice. Again, the specific facts of each case will call for an individual determination.

### 3. Prejudice to parties.

The unitary discovery and trial of a patent case requires the immediate incursion of all the costs and confusion in proportion to the complexity of the issues. However, as noted above, bifurcating a case adds costs to the parties in the form of the additional expense associated with two trials and adds delay in final resolution.[20] And, the decision to bifurcate will likely affect the parties to different degrees. Consequently, the court should examine the individual situation of each party to ensure that no one party is placed at a distinct disadvantage as a result of the court's decision.

Another element of potential prejudice that appears to arise in most patent cases is the need to protect confidential information. Bifurcation of the damage issues can protect ordinary, but sensitive, business records, at least until liability, if any, is established.[21] However, most often the confidential information needing protection is attorney opinions in the form of advice-of-counsel, that otherwise must be revealed when used as a defense to willful infringement. Bifurcation of discovery and trial has been used to ameliorate the prejudice of premature disclosure of a party's work product secrets and litigation strategies.

In willful infringement cases, an alleged infringer faces the dilemma of whether or not to pursue an advice-of-counsel defense on the willfulness issue. If it chooses to make an advice-of-counsel defense, it thereby waives attorney-client privilege for documents relating to counsel's infringement opinion and possibly gives the patent-holder a tactical advantage on the liability issue.[22] Under Federal Circuit precedent, if a defendant adheres to the claim of privilege, a court is permitted to infer that no opinion of counsel was sought or that the opinion provided was not favorable to the defendant.[23] In other words, by maintaining attorney-client privilege, the alleged infringer, in effect, waives his advice-of-counsel defense. As a consequence of this dilemma, the Federal Circuit stated:

> Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera,* reveal that the [accused infringer] is indeed confronted with this dilemma. While our court has recognized that refusal of a separate trial will not require reversal in every case involving attorney client communications bearing on willfulness, we have suggested the advisability of separate trials in appropriate cases.

*Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643–44 (Fed.Cir.1991).

In addressing the dilemma, courts have not usually held a separate trial on willfulness alone.[24] The more usual situation is that, if the court otherwise decides in favor of bifurcation, then discovery as to both willfulness and damages will be stayed and then litigated at a second trial. *Princeton Biochemicals,* 180 F.R.D. at 260; *Novopharm*

---

**20.** *Willemijn Houdstermaatschaapij BV,* 707 F.Supp. at 1435, *citing H.B. Fuller Co. v. National Starch & Chem. Corp.,* 595 F.Supp. 622, 625 (D.Del.1984).

**21.** A mere claim of need to protect confidential business records has not fared well. *Brad Ragan,* 89 F.R.D. at 550–551. But where major damages were sought by one major competitor from another, the court stayed discovery and trial on damages to better protect sensitive financial and marketing information. *Industrias Metalicas Marva,* 172 F.R.D. at 2–3.

**22.** *Novopharm,* 181 F.R.D. at 311–12; *Patent Holding,* 46 U.S.P.Q.2d 1566; *Neorx Corp.,* 28 U.S.P.Q.2d 1395, 1993 WL 592531.

**23.** *See Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1572–73 (Fed.Cir.1988).

**24.** This Court's research has only found one court which separated out the willfulness issue by itself. In that case, the court refused to stay discovery, and required the willfulness issue to be determined by the same jury immediately after its decision on liability and damages. *Johns Hopkins University,* 160 F.R.D. at 36.

*Ltd. v. Torpharm, Inc.,* 181 F.R.D. 308, 312 (E.D.N.C.1998).

Even if a unitary trial will involve some prejudice, other factors may persuade the Court to deny bifurcation. *Princeton Biochemicals,* 180 F.R.D. at 260. An intermediate solution would be to stage the willfulness discovery at the end of the liability or combined liability-damage discovery, so that plaintiff will only obtain defendant's advice-of-counsel information after it has revealed its own theory of the case. Such a procedure may ease the possibility of prejudice wherein a plaintiff obtains insight into the alleged infringer's legal strategy. This would allow a separate trial for willfulness by an immediate resumption of the trial if liability is found, but avoids contamination of the jury by removing issues of bad intent from the liability phase.

In all events, the mere assertion of a purported advice-of-counsel dilemma is not a sufficient showing for initiating consideration of providing some protection against premature disclosure of the advice-of-counsel opinions. Rather, the party must present the attorney opinion for *in camera* inspection and show, by specific facts, the extent of prejudice, if any, should the opinion be revealed at an earlier stage of the proceedings. *Id.; Neorx Corp. v. Immunomedics, Inc.,* 28 U.S.P.Q.2d 1395, 1993 WL 592531 (D.N.J. 1993); *but see Home Elevators,* 933 F.Supp. at 1091 (simple case—examination not required). The extent of prejudice "depends on the nature of the advice sought, the information provided to obtain the advice, and the advice given pre-infringement to the defendant." *Patent Holding Co. v. Tg (Usa) Corp.,* 46 U.S.P.Q.2d 1566, 1568 (E.D.Mich. 1998).

### 4. The effect of bifurcation on the potential for settlement.

Courts have expressed differing views as to whether bifurcation aids or impedes settlement. Some courts have found that bifurcation with a stay of damage discovery can be counter-productive to settlement because discovery on damages educates each party on the other's view of the damages. Damage discovery assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision and, consequently, can facilitate settlement discussions.[25] Where discovery is stayed, the parties may be deprived of this information.

Other courts cite aid in settlement as a reason for considering bifurcation.[26] Presumably, the knowledge of the liability verdict and the savings in cost of expensive damage discovery will provide both room and the means for compromise. This is especially so when the defendant has agreed to supply the plaintiff with sales information. *Princeton Biochemicals,* 180 F.R.D. at 259.

### 5. Suitability of bifurcating trial but not discovery.

Finally, a court may consider bifurcating the trial, but not discovery.[27] This procedure will be particularly useful where (1) the impetus for separate trials is a concern over jury confusion if all the issues were presented in a unitary trial, or (2) a concern the defendant may be prejudiced by presentation of evidence of willfulness during the liability phase. This scenario envisions immediate back-to-back trials in front of the same jury. *Johns Hopkins Univ.,* 160 F.R.D. at 35–37. It avoids a long delay and consequent risk of needing a new jury, which otherwise presents itself when there is a gap in the discovery.

Avoiding a discovery stay has been considered especially helpful when the litigious or uncooperative nature of counsel persuades the court that bifurcating discovery may only invite repeated disputes and delay. *Willem-*

---

**25.** *Johns Hopkins University,* 160 F.R.D. at 35.

**26.** *Industrias Metalicas Marva,* 172 F.R.D. at 8; *AVIA Group,* 22 U.S.P.Q.2d at 1477, 1991 WL 340569.

**27.** *Johns Hopkins University,* 160 F.R.D. at 36 (denying stay and bifurcation of trial, but suggesting serial trials before the same jury in which liability would be tried first, followed by immediate presentation of willfulness issue upon finding of liability); *Patent Holding,* 46 U.S.P.Q.2d 1566 (court allowed bifurcation of trial but denied the motion to the extent it would bifurcate discovery).

*ijn Houdstermaatschaapij BV,* 707 F.Supp. at 1435. Also, by refusing to bifurcate discovery and, at most, staging the sensitive discovery at the end, the court allows itself the advantage of reserving decision on bifurcating the trial until a time nearer the trial, when it and the parties will have a clearer understanding of the issues and proof so as to permit a more informed decision on separate trials.

## B. The Factors Applied to the Instant Case

Turning to the instant motion to bifurcate and stay discovery, defendant seeks two separate trials—the first on liability and the second, if necessary, on willfulness and damages. Damages and willfulness discovery would be stayed pending the liability verdict. Plaintiff has demanded a jury trial. Defendant must first demonstrate that liability is separable from the other issues. Plaintiff first argues against bifurcation claiming it would produce inefficiencies because its evidence of IBM's copying would be relevant to both the liability phase, through proof of infringement under the doctrine of equivalents, and the willfulness phase. Defendant does not dispute this and also concedes that copying may be relevant to its invalidity defense of obviousness. However, defendant is also correct by pointing out that other courts have found that the overlap of proof of copying for either equivalents or for obviousness, and copying to show willfulness, to be insubstantial as a factor counting against bifurcation. *See Amsted,* 16 U.S.P.Q.2d at 1740. Nothing in this case persuades the Court that evidence of copying will be so substantial by itself so as to require a combined trial of liability and willfulness.

Plaintiff also suggests denial of bifurcation because defendant has raised the equitable defenses of laches, estoppel, and waiver as affirmative defenses in its answer. Proof of sufficiently egregious willful infringement could provide a basis for plaintiff to demonstrate defendant's unclean hands such that defendant could not assert its equitable defenses. *See Haworth,* 32 U.S.P.Q.2d 1365, 1993 WL 761974. If so, there may be a Seventh Amendment problem or, at a minimum, an overlap in evidence problem which

may be grounds for denying bifurcation. Neither party has sufficiently briefed this point, and it does not appear that the information required to resolve the inquiry is available at this point in the litigation. That decision may be made at another time and then, unless defendant has waived its equitable defenses, the Court may find bifurcation unsuitable. At this point it would be premature to grant or deny bifurcation of willfulness and liability based on defendant's affirmative defenses.

■ Notwithstanding the lack of a definite Seventh Amendment or evidentiary overlap problem, in order to overcome the presumption in favor of a unitary trial, defendant must demonstrate that bifurcation will produce significant advantages without unduly prejudicing the opposing party. Defendant's major argument in favor of bifurcation is that the cost and complexity of the damage discovery and trial justifies separation of issues. Plaintiff concedes that if the damage issues prove sufficiently complex, a separate trial on damages should be considered. Plaintiff does not concede, however, that such is the situation in this case. Consequently, the Court now examines whether defendant has met its burden of showing that separate trials on liability and damages are justified.

As noted above, bifurcation has been granted in patent cases by many courts where liability and damages are exceedingly complex. Defendant contends that the damage issues here will be very complex, will require extensive discovery, and, at trial, could overwhelm the issue of whether defendant is actually liable.

IBM was directed to provide specific evidence to support its claim that the damage issue will be both costly and complex by showing the likely discovery and evidence. It failed to supply the specifics which the Court expected, except with respect to plaintiff's claim for damages based on lost licensing opportunity. There, it showed that ten to twenty third parties may be involved, along with extensive documents and special expert witnesses. Plaintiff claims the numbers to be exaggerated or excessive. Nevertheless, other courts have recognized that

issues of lost licensing opportunities and reasonable royalty claims can make the damage issue sufficiently complex and costly so as to justify bifurcation. *See, e.g., Novopharm,* 181 F.R.D. 308. Fortunately for easing the Court's decision, plaintiff has deflated defendant's argument by agreeing to forego its "convoyed sales" and "lost license opportunity" damages theories and has expressly limited the entire damage calculation to the statutory minimum reasonable royalty. (Docket No. 68 at 1)

The Court finds plaintiff's concession sufficient to foreclose further consideration of bifurcating damages from liability. Defendant still asserts that simply calculating a reasonable royalty will be complicated due to the volume of sales of the accused device and that this favors bifurcating liability and damages. However, the Court disagrees with the implication of defendant's argument that a reasonable royalty calculation for a commercially successful accused device is an element of complexity that alone will justify bifurcation. Cases granting bifurcation have usually involved additional elements of complexity.[28] There are no similar additional complicating factors in this case. It may be true that a large number of defendant's records will need to be gathered and reviewed if no cost and profit summaries are available. That is not a special factor which would convince the Court to allow bifurcation.

Defendant also suggests that even if the damage phase does not dwarf the liability phase, bifurcation could be justified because if a no liability verdict were returned, then both the Court and the parties would reap substantial savings in damages discovery. However, no preliminary injunction or other hearing has been held which could provide the Court with insight for making such a prediction. At present, there is no more support for the conclusion that the jury will find no liability than for the opposite conclusion. And, the potential discovery savings offered by bifurcation combined with a stay of damage discovery may be offset by the negative impact on the possibility for an informed settlement without damage discovery. Last, in this case, the parties have already had numerous serious discovery disputes. The bifurcation of discovery would exacerbate an already present problem.

Outweighing any of the unproven economies offered by plaintiff to support bifurcation is the potential prejudice to plaintiff. Plaintiff says it cannot afford the potential delay in final resolution of this matter from bifurcation. In this particular case, plaintiff is a small business, while defendant is a large, international firm, with many resources. Moreover, it is plaintiff, the small business, which is willing to proceed with damages discovery. Granted, most of the production cost will likely fall upon defendant, but plaintiff will have to review the documents and be ready for a unitary trial. These facts may not alone preclude bifurcation, but they ameliorate any concern that plaintiff's request for a unitary trial has some ulterior motive such as spending defendant into financial difficulty.

There is, however, one possible factor in favor of bifurcation. It is defendant's assertion that it faces the advice-of-counsel defense dilemma described by the Federal Circuit in *Quantum Corp.,* 940 F.2d 642. In support of its contention that it faces this dilemma, defendant has submitted its advice-of-counsel documents which the Court has reviewed *in camera.* For several reasons, the documents do not make a particularly strong showing that the dilemma defendant faces is extraordinary. First, the opinion of counsel proffered is for only one of the patents in suit. Second, the opinion was formed several months after the lawsuit was filed.[29]

---

28. *Princeton Biochemicals,* 180 F.R.D. at 259 (complex liability and damage phases); *AVIA Group,* 22 U.S.P.Q.2d 1475, 1991 WL 340569 (large number of patents in suit in addition to "reasonable royalty" calculation); *Novopharm,* 181 F.R.D. 308 (complex lost profits determination in addition to "reasonable royalty" calculation); *Giro Sport Design, Inc.,* 10 U.S.P.Q.2d 1863, 1989 WL 418774 (complexities of damage issue compounded by allocation of damages among eleven other non-party accused infringers).

29. Once an infringer has notice of another's patent rights, it has a duty to exercise due care to obtain legal advice before initiating infringing activity. *In re Dahlgren Intern., Inc.,* 819 F.Supp. 568, 576 (N.D.Tex.1992). *See Westvaco*

Third, the opinion was not generated by trial counsel so as to implicate work product or counsel as a witness. Fourth, while the opinion appears to be thorough and complete, it does not appear to unfairly reveal trial strategies or defenses, and, more importantly, defendant has not explained how these things might be revealed. Defendant is correct in contending that it may suffer some prejudice if no steps are taken to address the problem. This fails to satisfy defendant's burden of proof. The Court finds defendant has not sufficiently justified discovery bifurcation, but it need not now foreclose serial trials on liability and then on willfulness and damages.

In sum, after careful consideration, the Court concludes defendant has failed to carry its burden of showing that the advantages of bifurcation for trial, along with a stay of discovery on willfulness and damages is justified. The factors which might justify bifurcating liability from damages with an accompanying stay in damages discovery, such as extremely complex damages, liability, and/or other issues, or a likelihood of defendant's success on liability, are either absent from this case or not present to the necessary degree. Further, granting a separate trial on damages with an accompanying stay in discovery risks prejudicial expense for plaintiff due to its small size. The danger of increased discovery disputes is a factor weighing against staying any part of discovery. Finally, the advice-of-counsel dilemma does not justify a stay in discovery. The Court will stage the willfulness discovery as it relates to defendant's advice-of-counsel defense to occur at the end of the discovery period. This may be overly generous to defendant, but plaintiff will not be prejudiced thereby. The Court will leave open the possibility of conducting a serial trial of liability first and then an immediate trial of damages and willfulness. However, any delay may depend on the state of defendant's infringement defenses, as alluded to above.

For all these reasons, defendant's motion to bifurcate the trial and stay discovery will be denied with prejudice in part and denied

without prejudice in part. That part which requests a stay in discovery will be denied with prejudice. However, defendant's request for separate trials, to the extent that it requests a serial trial of damages and/or willfulness and damages right after the liability phase, will be denied without prejudice to defendant filing a new motion making said request after summary judgment.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to (1) bifurcate the trial into separate liability and damage phases and (2) stay discovery of the willfulness and damage issues (docket no. 10) is denied as follows: That part which requests a stay in discovery is denied with prejudice, except that the Court will stage the discovery on the willfulness issue at the end of discovery, but to the extent that defendant's motion requests a serial trial of damages and/or willfulness immediately after the liability phase, the denial is without prejudice to defendant filing a new motion making said request after summary judgment.

*Corporation v. International Paper Company,* 991 F.2d 735, 744 (Fed.Cir.1993) (Defendant's efforts not after-the-fact); *Johns Hopkins University v. CellPro,* 978 F.Supp. 184, 194 (D.Del.1997), *aff'd,*

*Johns Hopkins University v. CellPro, Inc.,* 152 F.3d 1342 (Fed.Cir.1998) (delay in seeking counsel opinion negates assertion of good faith).